School District No. 1. *v.* Dauchy.

SCHOOL DISTRICT No. 1 *vs.* DAUCHY.

The act of God will excuse the non-performance of a duty created by law, but not of one created by contract.

The apparent exceptions to this rule, as where the performance of a contract is excused by the death of a party who was personally to perform, or the destruction of the specific subject matter of the contract, are rather cases of an implied condition as to such contingency, than of absolute contracts discharged by the act of God.

Where, therefore, A. agreed to build and complete a school-house by the first Monday of May, 1854, and had nearly completed the same on the 27th of April, 1854, when the building was destroyed by lightning, whereby alone he was prevented from performing his contract, which was absolute in its terms,—it was held, that the non-performance was not excused by such destruction of the building.

School District No. 1. *v.* Dauchy.

ASSUMPSIT. The declaration contained a special count for the non-performance of a contract by the defendant to build a school-house for the plaintiffs, and the money counts.

The defendant, on the 7th day of December, 1853, made a contract in writing with the plaintiffs to build the school-house for the sum of $2,469, and to complete the same by the first Monday of May, 1854; a part of the price to be paid by installments as the work progressed. The defendant commenced the building of the same, and had nearly completed it, when, on the 27th day of April, 1854, it was struck by lightning, and consumed by the fire communicated thereby. At this time he had received $1,000 of the price, having been entitled thereto under the contract, by the progress of the work. The plaintiffs, on the day following the destruction of the building, requested him to erect another building on the same site and of the same description, and offered to waive the condition of the contract with regard to the time within which the building was to be completed, and to allow him such further time as should be necessary. The defendant declined the offer and refused to do anything more toward the performance of the contract, and the plaintiffs brought suit.

The defendant pleaded the general issue, with notice that he should offer evidence to prove, that performance of the contract was rendered impossible by the destruction of the building in the manner stated, and that up to the time of its destruction he had performed everything that by the contract he was bound at such time to have performed.

The case was tried before the jury, at the superior court for Fairfield county, October term, 1856.

On the trial, it was admitted that the defendant had performed all that was required of him by the contract up to the 27th day of April, 1854, and that he would have completed the building within the time required by the contract, if it had not been at that time destroyed by fire.

The defendant offered evidence to prove that the building was struck by lightning, and the fire by which it was consumed communicated thereby. To this evidence the plain-

tiffs objected, but the court admitted it. The defendant claimed that by such destruction of the building he was excused from further performance of the contract. The plaintiffs denied this claim and requested the court to charge the jury that such destruction was no excuse for non-performance, and no defense to the action.

The plaintiffs also requested the court to instruct the jury, that by reason of their offer to waive the stipulation of the contract as to the time within which it was to be performed, and to allow the defendant the necessary time for the erection of another building, and the refusal of such offer by the defendant, they were entitled to a verdict, even if the defendant would otherwise have been excused from performance; and that if the defendant was not liable for such non-performance, the plaintiffs were entitled to recover back on the money counts, the sum of one thousand dollars which had been paid him under the contract.

The court charged the jury, that if they should find that up to the time the building was burnt, the defendant had done everything required by the contract to be done, or necessary to be done by that time in order to the completion of the building in the time stipulated, and that complete performance of the contract was rendered impossible by the burning of the building, and that the burning was occasioned by lightning alone, they ought to find the defendant released from further performance of his contract and render a verdict in his favor. That by the "impossibility" spoken of, was meant an absolute, physical or natural impossibility, inherent in the nature of the thing to be done; and that no inconvenience merely, no expense and no necessity for extra aid or effort, however great, if within human reach or control, would constitute such impossibility.

That if the defendant's liability for the further performance of the contract had been released by reason of such burning of the building, his liability on the contract could not be revived by the offer of waiver, and request to rebuild, made by the plaintiffs, unless the defendant accepted such offer.

And that if the jury should find that the defendant was so

released from the further performance of his contract, so that no recovery could be had by the plaintiffs on the special count in the declaration, no recovery could be had by them on the common counts.

The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial.

*Hawley* and *Ferry*, in support of the motion.

1. The charge of the court, upon the first point, proceeded upon the idea, that the burning being occasioned by lightning, was an "act of God," as that phrase is used in the books, and released the defendant from the obligation of his contract. *Warren* v. *Powers*, 5 Conn., 373. This idea was erroneous. The distinction in the cases is between that class, where the obligation is imposed by operation of law, and that where the obligation is created by the express agreement or covenant of the party himself. In the former, the phrase "act of God," has been applied to a variety of unavoidable accidents, which have been held to discharge the legal liability. In the latter class, the only contingency to which that phrase has been applied, as excusing performance, has been the death of the party who alone in his own proper person could perform the thing to be done, or the destruction of the very thing, which, identically, was to be delivered, sold or transferred, and which it was physically impossible always for human power to cause to exist. 2 Co. Lit., 206. 3 Co. Lit., note 1. to 206, a. *Williams* v. *Lloyd*, Wm. Jones, 179. 2 Pars. Cont., 184. Bac. Ab., Condition N. Chit. Cont., 5th Am. ed., 57, 59, 735. 1 Selwyn, N. P., Covenant, chap. 3. Newland Cont., 325. *Walton* v. *Waterhouse*, 2 Saund., 420, note. *Monk* v. *Cooper*, Strange, 763. *Bullock* v. *Dormitt*, 6 T. R., 650. *Atkinson* v. *Ritchie*, 10 East, 530. *Adams* v. *Nichols*, 19 Pick., 275, 279. 1 Sw. Dig., 93. 2 Kernan, 99.

2. The burning by lightning only prevented the performance within the time contracted for. But time is not of the essence of the contract, and the waiver thereof the next day, before the expiration of the time limited in the agreement,

rendered the obligation of substantial performance still binding on the defendant. 2 Pars. Cont., 185.

3. But if the defendant was wholly excused from the performance of his contract, the plaintiffs are entitled to recover the money paid on the common counts.

*Dutton* and *Carter*, contra.

1. The defendant was excused for non-performance, and the charge of the court to that effect was correct. 1st. The general principle is, that a man is not responsible for not doing what God has rendered impossible. 1 Sw. Dig., 287. *Warren* v. *Powers*, 5 Conn., 373, 381. 2d. This rule applies where there is only a common law duty, as in the case of bailees. 1 Sw. Dig., 391. 3d. Also to conditions to obliga. tions, whether under seal or not. 2 Pars. Con., 184. *Laughter's case*, 5 Co. Rep., 22. Broom's Leg. Max., 110. Com. Dig., Condition L., 12, D. 1. 4th. Also to express contracts, to the extent at least of the charge. *Shelley's case*, 1 Co. Rep., 98. 2 Pars. Con., 184. *Wright* v. *Bean*, 22 Maine, 531. 2 Green. Ev., sec. 135. *Jones* v. *Judd*, 4 Comst., 412.

2. This is not a case where the defendant could have substantially performed. In the case of *Phillips* v. *Stevens*, 16 Mass., 238, the performance was not impossible. In *White* v. *Maine*, 26 Maine, 361, the defendant could have substantially fulfilled without loss.

3. The money paid can not be recovered back. 1st. When it was paid, it was due by the terms of the contract, and the defendant had a right to it. 1 Pars. Con., 386. 2. The consideration has not failed. The property of the building vested in the plaintiffs, and the loss was their loss. 34 Eng. L. & Eq., 178. 3d. The act of God left the parties just as they were at the time. *Actus Dei nemini facit injuriam.* It never deprives a man of rights previously acquired.

ELLSWORTH, J. It is not important, whether we consider the question in this case as arising out of the objection to the defendant's evidence, or out of the charge to the jury. The question is the same in either case, and it is this. Was

the defendant discharged from his contract to complete and deliver the said school-house by the time agreed, the first Monday of May, 1854, by reason of the fact, that just before that day it was burnt and wholly destroyed by lightning?

There is no dispute as to the terms of the contract, nor as to their import and force. The defendant did agree absolutely and unqualifiedly, that the building should and would be completed and ready to be delivered to the plaintiffs by the first Monday of May at the farthest. This he has not done. The building has not been completed nor delivered, although it is true he nearly finished it, and it is found could and would have completed it, had it not been destroyed by lightning. In the contract, he made no provision for any contingency or event whatever, and the question is, can he now incorporate into his contract a provision for a contingency or a condition, or must he abide by his positive and absolute undertaking.

We believe the law is well settled, that if a person promises absolutely, without exception or qualification, that a certain thing shall be done by a given time, or that a certain event shall take place, and that the thing to be done or the event is neither impossible or unlawful, at the time of the promise, he is bound by his promise, unless the performance, before that time, becomes unlawful. Any seeming departure from this principle of law, (and there are some instances that at first view appear to be of that character,) will be found, we think, to grow out of the mode of construing the contract or affixing a condition, raised by implication from the nature of the subject, or from the situation of the parties, rather than from a denial of the principle itself. Such, for instance, as a promise to marry, where it must be presumed that the parties agree to intermarry if they shall be alive; or a promise to deliver a certain horse at a future time, and before the day arrives, the horse dies; in which case, the parties are held to have contracted in view of that contingency. In these and like cases, the court will hold that the parties did not understand that the thing was to be done, unless the life of the persons, or of the horse, was continued,

so that there would be an object and an interest in the execution of the contract. These and a few other exceptions of a similar character, are to be found in the books, but they are not so much exceptions after all, as cases where the intention of the parties is presumed or inferred, though not expressed, from their peculiar situation, or from the subject matter itself.

It is said, however, that there is one real exception to the rule, viz., where the act of God intervenes to defeat the performance of the contract; and that is the exception on which the defendant relies in this case. The defendant insists, that where the thing contracted to be done, becomes impossible by the act of God, the contract is discharged. This is altogether a mistake. The cases show no such exception, though there is some semblance of it in a single case which we will mention. The act of God will excuse the not doing of a thing where the law had created the duty, but never where it is created by the positive and absolute contract of the party. The reason of this distinction is obvious. The law never creates or imposes upon any one a duty to perform what God forbids or what he renders impossible of performance, but it allows people to enter into contracts as they please, provided they do not violate the law. It is further said, that the books declare, that where the condition of a bond becomes impossible by the act of God, or is prohibited by the law, the condition becomes void and the bond is absolute, or if it be a subsequent condition for the devesting of title, that the condition becomes void, and the title remains good. Whether even this is true, without some qualification, we are not quite confident, nor will we stop to consider; but if so, still, the doctrine of that class of cases does not reach the present one, as the same books abundantly declare.

In Platt on Covenants, p. 582, it is said that the rule laid down in *Paradine* v. *Tone*, Alleyn, 27, has often been recognized in courts, as a sound one, viz.: where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, nothwithstanding any accident by inevitable necessity, because he might have pro-

School District No. 1. *v.* Dauchy.

vided against it by his contract; therefore if a lessee cove-
nants to repair, the circumstance of the premises being
consumed by lightning, or thrown down by an inevitable
flood of water, or an irresistible tornado, will not effect his
discharge.    But where the law creates a duty or charge, and
the party is disabled to perform it without any default in him,
and hath no remedy over, there the law will excuse him, as
in the case of waste where the house is destroyed by a tem-
pest.    In some cases where the act of God renders perform-
ance absolutely impossible, the covenants shall be discharged
*quia impotentia excusat legem;* as if a lessee covenants to
leave a wood in as good plight as the wood was at the time
of the lease, and afterward the trees are blown down by
tempest; or if one covenants to serve another for seven years,
and he dies before the expiration of the seven years, the cove-
nant is discharged, because the act of God defeats the possi-
bility of performance.    I should rather say, because it is im-
plied that the thing shall exist or life be prolonged, or else the
contract of course can not be broken.    Chit. on Cont., 5 Am.
ed., p. 60, says, " But a promise is not void against the party
who makes it, merely because its execution is improbable or
difficult, or because the impossibility of performing it applies
only to the promisor individually, the law not forbidding the
thing to be done, and there being no breach of moral duty
involved in it.    If a party by his own contract, lay a charge
upon himself, he is bound to perform the stipulated act or
pay damages for the non-completion, unless the matter was,
at the time, manifestly and essentially impracticable."    The
same is laid down in 2 Pars. on Con., 184. In Com. Dig., tit.
Condition d. 1, it is said, " And if a man covenants or prom-
ises to do a certain thing, at a certain time, and it becomes
impossible by the act of God, he shall not be excused."    See
the cases of *Bullock* v. *Dommit,* 6 Term R., 650, where the
lessee was held bound to rebuild in case of fire, *Monk* v.
*Cooper,* 2 Str., 763, and *Atkinson* v. *Ritchie,* 10 East, 530, where
the freighter of a vessel covenanted to proceed to St. Peters-
burgh and there take a full cargo, but was prevented by an
embargo.    Lord Mansfield and the other judges held that no

exception not contained in the contract itself, could be engrafted upon it by implication, as an excuse for its non-performance.    The rule laid down in the case of *Paradine* v. *Tone*, Alleyn, 27, has been often recognized in courts as a sound one, that where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity.    In *Burret* v. *Dutton*, 4 Camp., 333, Gibbs, C. J., says, " Ice being in the Thames, which rendered it impossible, did not excuse the non-performance of the charter party : there was an absolute undertaking by the freighter of this ship to load and discharge her in thirty days, and whether it was or was not possible for him to do so from the state of the weather, is quite immaterial."    So in *Barker* v. *Hodgson*, 3 M. & S., 267, it was held, that an infectious disease at a port, which prevented commercial intercourse, did not discharge or qualify the covenant in the charter party.    So in *Shubrick* v. *Salmond*, 3 Burr. 1637, it was held, that though contrary winds and bad weather would not allow of the captain's proceeding with his vessel to her port in South Carolina, as he had agreed to do, the covenantor was liable.    The same principle is laid down in *Harmony* v. *Bingham*, 2 Kernan, 106, that " where a party engages unconditionally by express contract to do an act, performance is not excused by inevitable accident or other unforeseen contingency, not within his control."    So in *Adams* v. *Nichols*, 19 Pick., 275, the court held that where a person contracted to build a house on the land of another, and the house was, before its completion, destroyed by fire, without his fault, he was not thereby discharged from his obligation to fulfill his contract.    The court most fully recognize the rule, that the act of God will not operate to discharge a promise which is absolute and unqualified in its terms, though the contingency is beyond the power of the contractor.    The same is held in *Lord* v. *Wheeler*, 1 Gray R., 283, though the case was taken out of the rule by its peculiar circumstances.

These and other authorities which might be cited, satisfy us that the law was not correctly laid down in the court

below, and concurring as we do with the doctrine of those cases, we advise a new trial.

In this opinion the other judges, STORRS and HINMAN, concurred.

New trial advised.