DE WITT C. WARD, Respondent, *v.* THE HUDSON RIVER BUILDING COMPANY, Appellant.

*N. Y. Supreme Court, Second Department, General Term, May* 13, 1889.

1. *Contract. Act of God.*—An act of God is not a sufficient excuse for the non-performance of a duty assumed by virtue of a contract, and not by operation of law. In such case, a party should protect himself against such a danger by an appropriate clause in his contract.
2. *Same.*—A clause construed to be a liquidated damage clause.

Appeal from a judgment entered upon the decision of the court without a jury.

PRATT, J.—This action was commenced in equity to obtain relief from a so called penalty provided in a contract between the parties, and to recover a sum of money. The first and, perhaps, the controlling element, is whether or not the sum, against which relief was sought, was a penalty, or fixed and liquidated damages. The facts are quite complicated. A statement of the material facts is necessary to a proper understanding of the case.

The undisputed evidence was that the parties made four agreements in writing. The first one was made April 28, 1887, and provided that plaintiff should do and finish certain work on and furnish materials for two houses for defendant at Hill View, South Yonkers, N. Y., on its plots 9 and 27 on the map, under the direction and to the satisfaction of an architect, according to drawings and specifications—the work to be wholly finished on or before October 1, 1887, and defendant agreed to pay therefor $10,300 in three installments as the work progressed, provided the architect certified that the work had been done upon which the installments respectively depended.

The second contract was made in June, 1887, and con-
tained like provisions respecting the building of two houses
for·defendants at same place on its plots 17 and 19 on said
map, for which defendant was to pay $10,000, the install-
ments upon the architect's certificates; the work to be com-
pleted on or before January 1, 1888. Each of these con-
tracts provided that plaintiff should pay the defendants ten
dollars per day for every day's default after the dates fixed
for completion of the work, and for liquidated damages. It
seems that plaintiff was to build two other houses for de-
fendants on plots 11 and 45. on said map. The plaintiff
was in default under all these contracts on the 5th of
March, 1888, and on that day the parties entered into a
further contract in writing. This third contract recites the
first two contracts above noted and refers to the provision
for the ten dollars as "a penalty." It then recites the
plaintiff desired an extension of time to complete his work,
viz: until March 25, 1888, on the four houses to be built
under the two contracts, dated one in April and the other
in June (on plots 9, 17, 19 and 27), and until August first
on those to be built on plots 11 and 45. It also recites that
the so called penalties for default on the four houses (plots
9, 17, 19 and 27), would amount to $1,540, on March 25,
1888, and that plaintiff desired to avoid the payment there-
of, all the while calling it a "penalty." It also recites that
independently of this $1,540, there would have been due to
plaintiff from defendant a payment under the two contracts
amounting to $1,210, on the houses on plots 17 and 19.
The instrument then attests a mutual agreement that "the
sum or penalty" which would become due March 25, 1888,
the date of the desired extension on houses "shall be $1,540,
by way of liquidated damages unless said four houses and
all extra work are then entirely finished in accordance with
the plans and specifications under the original contracts"
and that no farther payments should be made on the houses
on plots 9, 17, 19 and 27 until the same are entirely com-

pleted on or before March 25, 1888, and that if they were completed on that day the defendant would waive all claim to the $1540, and plaintiff would waive all claim for certain contemplated work; and, in that event, defendant would then pay the $1210, etc. Before proceeding to the fourth agreement it will be well to state the intervening facts. Plaintiff claims that they constitute the ground on which he should be relieved from the so called penalties. His evidence shows that on Wednesday, March 6, the houses were completed with the exception of the cesspools and cisterns, and that three or four days would have been sufficient time in which to have finished them.

That on Sunday night, March 12th, the remarkable snow storm, called "the blizzard," set in and continued until Wednesday morning, the thirteenth, to such an extent that it was impossible to work in these cesspools and cisterns full of water; that it took them three days to pump them out, until the twentieth, so that they were dry enough for the men to work in them, and even then, that the bottoms were springy; that the water flowed in upon them to such an extent that the cement would not set until after the thirtieth of March. His workmen testified that they worked diligently to complete the work, and perhaps that may be assumed after the storm.

On the thirtieth of March, the plaintiff's counsel addressed a note to defendant, in which he claimed that the completion of the work on the twenty-fifth had been prevented by the storm as an act of God, and insisted that the work was substantially, though not "wholly or entirely" completed.

On the sixteenth of April the parties made their fourth agreement, which recites their agreement of the fifth of March, and "that by the terms of said agreement certain penalties were to be paid, in case the houses therein mentioned were not finished on or before March 25, 1888; and, in case they were finished, the titles to the plots referred to

in said contract were to be passed, and all matters therein referred to were to be adjusted on March 26th." It also recites that the houses were not completed on the twenty-sixth, and that the architect's certificate was not presented, and that plaintiff · claimed that the penalties should not be exacted by reason of the facts set up in the letter of his counsel under the date of the thirtieth of March and that the parties were willing to go on and close their contract, " leaving the question of said penalty for litigation in case said Ward chooses to litigate the same ; the suit to be commenced within six months, if at all, and the said parties hereto removing all other questions and property from their controversy, except the one question of penalty, as alleged.' " It then attests that the parties closed their matters, reserving the question aforesaid. The defendant gave its deeds, and insisted on the claim to the $1,540. Plaintiff waived all claims except to the payment of $1,210.

Plaintiff then brought his suit, asking, first to be relieved from the penalty, and that he might recover the balance due on his alleged right to the payment. Defendant set up the several agreements, the plaintiff's defaults, and denied that the storm constituted a defense, whether as an act of God or otherwise.

It asks no affirmative relief. The learned trial judge, in his opinion, treated the reserve sum as a " penalty ; " but in his decision granted relief against it, mainly on the ground that the completion of the work was prevented by the storm as an act of God, and adjudged that plaintiff was entitled to the balance claimed by him.

The parties have been most persistent in referring to the so-called " penalty" by two utterly inconsistent and irreconcilable names. In both their original contracts they refer to the ten dollars per day for default as liquidated damages. The expression in each is the same, " as and for liquidated damages." This, then, is the starting point. The ten dollars per day was not as a penalty. There was a definite

and distinct agreement that it was " as and for liquidated damages." Then, singularly enough, in their third agreement, which provides for the extension, they talk about the accumulation—the $1,540—and in their recitals, as a penalty. But, when they came to the contractual clauses, they varied their description of it, referring to it as " the sum or penalty," thus showing that there may have been some dispute between them with respect to its exact legal character. But they settled it. They " mutually agreed that the sum or penalty due under said contract on March 25, 1888, shall be one thousand five hundred and forty dollars ($1,540), by way of liquidated damages." They use this precise expression twice during the course of that contract, and they afterwards refer to it again by the phrase " as liquidated damages." They here use the latter as distinguished from the former, the idea of penalty. They could not have made their agreement clearer if they had used the not infrequent phrase, " as and for fixed and liquidated damages, and not as a penalty." Having thus thrice definitely agreed upon its legal character under such circumstances as to preclude the supposition of ignorance or misunderstanding, it would seem like undoing their bargain to treat this sum as a penalty. We do not overlook the fact that the recitals in their final agreement again refer to the $1,540 as a penalty. But that must be taken as the plaintiff's phrase. He was reserving the right to litigate the defendant's claim to this sum. It was to his interest to call it a penalty. The purpose of that agreement as far as it related to the $1,540, was to preserve the right of each party in *statu quo*. Neither of them waived anything respecting this sum. If the plaintiff chose, it was to be the subject of litigation and judicial construction. And, in this view of the recital, it is not a matter of much importance by what name they called or referred to it. The mere name would not change the legal character of the rights of either party respecting it, especially in view of the absence of evidence showing any

mistake or misunderstanding, and of the vital fact that each party was evidently standing upon and did not intend to waive any of his legal rights respecting it.

We therefore conclude that the plaintiff was justly liable to defendant for that $1,540, and was not entitled to any relief against it unless there was some legal excuse growing out of the storm as an act of God. We are unable to see our way to hold this a sufficient excuse. The plaintiff's duty to finish the cesspools and cistern was clearly within the contract. It was a duty assumed by him by virtue of his contract, and not by operation of law. The rule in such cases is that he should have protected himself against such a danger by an appropriate clause in his contract. Harmony *v.* Bingham, 2 Kern. 99; Tompkins *v.* Dudley, 25 N. Y. 275; School District *v.* Dauchy, 25 Conn. 530.

And besides that we do not see how plaintiff can meet the difficulty that he was not diligent in prosecuting his work after the contract of March 5th, 1888, was made. Grant that it was not signed until the sixth, which was Wednesday. His witness says that the work might have been done in three or four days. It might, therefore, have been finished on Saturday. This witness says that the weather during that interval was good. The storm did not begin until Sunday night. Indeed the plaintiff really offers no excuse for his delays under either of these contracts.

So early as October 26th, 1887, the defendant wrote him that they " noticed, with disappointment and displeasure, that there had been no men working, nor had any work been done on the cottages   *   *   *   for some time past."

The defendant never waived, but always insisted upon the liquidated damages, doubtless as a means of hurrying forward their work. They offered, nay agreed, to waive their right on March 5th or 6th, provided the plaintiff should finish the work by the 25th. And yet there is no pretense that he did anything from that time on, until the

storm came.     Courts cannot nor ought they to, favor or accept such pleas under such circumstances as excuses for non-performance of engagements.

Liquidated damages often constitute the only practical remedy in such a case.     The owner or employer builds upon the contractor's promise to finish, permits him to name his own time, make his plans for the sale or rental of his houses with reference to it, and the stipulation for liquidated damages is generally the only adequate means by which he may protect himself against a falling market, and a variety of other risks incident to the development of property by building upon it as a business.

It follows from these views that the judgment should be reversed and a new trial should be ordered.     The costs of the trial and of this appeal are awarded to the defendant to abide the event.

BARNARD, P. J., concurs; DYKMAN, J., not sitting.