# CHARLESTON.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* P. T.
BOARD *et als.*

(No. 5102.)

Submitted October 20, 1925. · Decided October 27, 1925.

1. PENALTIES—*When Performance of Duty Imposed by Law Becomes Impossible Because of Intervention of Vis Major, Penalty for Breach Cannot be Recovered.*

   When a duty is imposed by law, and its performance becomes impossible because of the intervention of a *vis major*, there can be no recovery of a penalty for its breach. (p. 224.)

   (Carriers, 10 C. J. § 943.)

2. CARRIERS—*Failure of Consignee to Unload Cars Within Free Time, Caused Entirely by Intervention of Vis Major, Does Not Render Him Liable for Demurrage.*

   The duty of a consignee to unload cars within the free time given by the tariffs of a carrier, and the obligation to pay demurrage for their detention, are classified with those imposed by law, and where the failure of a consignee to unload within the free time is caused entirely by the intervention of a *vis major*, the consignee is not liable for demurrage. (p. 226.)

   (Carriers, 10 C. J. § 743.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by the Chesapeake & Ohio Railway Company against P. T. Board and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*Robert E. McCabe,* for defendants in error.

HATCHER, JUDGE:

This is a case in which the plaintiff seeks to recover demurrage charges from the defendant for failure to unload certain

cars within the time permitted by its tariffs. Upon an agreed
·statement of facts, judgment was rendered by the circuit
court of Kanawha County in favor of the defendants. The
facts stated in the stipulation may be summarized as follows:

The defendants were contractors engaged in work at Hans-
ford, W. Va. Five carloads of slag and sand, billed to them,
.arrived at Hansford in August of 1921. Four of these cars
were interstate shipments, the other was intrastate. The cars
were not unloaded until $365.65 demurrage and war tax had
accrued under the plaintiff's tariffs, the validity of which is
admitted. At the time the cars were placed at Hansford and
·during the entire time for which the demurrage was charged,
men to the number of many hundreds and perhaps thousands,
engaged in what has become commonly known as the "Armed
March" on Logan County. During the continuance of this
march armed participants therein patrolled and were in com-
plete charge of the public highways and railroad tracks in
the vicinity of Hansford. The defendants were ready, will-
ing and repeatedly tried to unload the cars in question, but
were prevented by force and threats of the marchers from do-
ing so. The sheriff of Kanawha County and the Governor of
West Virginia were both appealed to by defendants for protec-
tion, but no aid was received from these officials. Civil au-
thority failed and the uprising continued until it was quelled
by U. S. troops. The defendants did everything in their power
to unload the cars promptly and their failure was due solely
to the threats and force of arms exhibited against them and
their employees, by the insurrectionists. The cars were un-
loaded immediately following the abatement of the "march".

The plaintiff contends that when its tariffs have been filed in
·compliance with the law, as was done in this case, they have
the force and effect of law; and that there are no exceptions in
the Interstate Commerce Act, the Public Service Act of West
Virginia, or the Tariffs filed thereunder, by which the de-
fendants may escape this liability.

As authority on this point the plaintiff relies on the case of
*Sinclair Refining Co. v. Schaff, Receiver for the Missouri,
Kansas and Texas Railway*, 275 Fed. 769. There the com-
pany had been prevented from loading or unloading certain

cars delivered to it by the defendant because of a strike of its own employees. The sheriff of the county intervened to enable the company to proceed, but was forced by the violence of the strikers to order all attempts to operate the plant to cease. Military authorities finally restored order. It was held that neither a strike in a plant which prevents a shipper from moving cars, nor an order of the sheriff forbidding attempts to move them will relieve the shipper from liability for demurrage charges thereon. The reason given by the court for this holding was: "In view of the prohibitions of the statute, it is clear that courts are equally without power to release parties from the obligation of tariffs providing for demurrage charges on the ground that such charges have been occasioned by a strike. Congress alone has the power to write such an exception into the statute."

Ruling number 8 of the I. C. C. is also cited by the plaintiff, refusing relief from demurrage because of a strike.

In a strike it is within the power of the employer to prevent or stop the strike by coming to terms with his employees. There is no impossibility of performance on the part of the shipper in case of a strike. But such a situation is not analagous to the one in question. Here the defendants do not seek relief on the grounds of a strike. The delay was not occasioned by a strike of the employees of the defendants, which the latter could have settled, but by an insurrection over which they had absolutely no control.

Ruling number 358 of the I. C. C. is also relied upon by the plaintiff. "Coal consigned to Tidewater was held in the cars at the port, awaiting the arrival of a vessel which had been delayed by storms: *held,* that the delay being due to conditions beyond the control of the rail carrier, its demurrage might not lawfully be waived." The facts upon which this ruling was made do not present a situation of impossibility of performance. The delay in arrival of the vessels was caused by "an act of God", but the coal designed for the vessels might have been unloaded from the cars and reloaded on the vessels upon their arrival. This procedure would have been costly and unpracticable, perhaps, but it was nevertheless possible.

Demurrage charges are assessed by operation of law, and

are not the result of a contract between carrier and consignee. It is a well established principle of law that while an "Act of God", unavoidable accident, or the stress of circumstances may not excuse the non-performance of an obligation created by contract, they will excuse the non-performance of a duty imposed by law. We find this distinction recognized by the English courts as early as 1647.

> "And this difference was taken, that where the law creates a duty or charge, and the party is disabled to perform it without any default in him, and hath no remedy over, there the law will excuse him.—but when a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract."

*Paradine* v. *Jane*, Alyen 27, 82 English Reports 897.

This ruling has been uniformly followed by the English courts, and has been approved in a long line of cases in the U. S., a few of which are:

*Cassidy* v. *Clark*, 7 Ark. 123.
*Beaty* v. *Scriviner*, 3 Ky. 138.
*Bunn et al.* v. *Prather et al.*, 21 Ill. 217.
*Mill Dam Foundry* v. *Hovey*, 21 Pick. (Mass.) 417.
*Monaco* v. *Monaco St. R. Co.*, 247 Pa. 242.
*First National Bank* v. *McConnell*, 103 Minn. 304.
*Harmon* v. *Fleming*, 25 Mon. 135.
*Niblo* v. *Binsse et al.*, 44 N. Y. 54.

> "The act of God will excuse the not doing of a thing where the law has created the duty, but never where it is created by the positive and absolute contract of the party. The reason for this distinction is obvious. The law never creates or imposes upon any one a duty to perform what God forbids or that He renders impossible of performance, but it allows people to enter into contracts as they please provided they do not violate the law."

> *School District No. 1* v. *Dauchey*, 25 Conn. 530.

> "Where an obligation or a duty is imposed on a

person by the law, he will be absolved from liability for non-performance of the obligation if his performance is rendered impossible without his fault by an act of God, or an unavoidable accident. But this rule is not generally applicable to contract obligations."

*Berg* v. *Erickson,* 234 Fed. 817.

One of the latest cases on this subject is that of *Southern Ry. Co.* v. *White, Receiver of the White Lumber Co.,* 284 Fed. 560, in which the railway company presented a claim of $1350.00 demurrage against the receiver of the White Lumber Co. for the detention of certain cars. This detention was caused by a storm of extraordinary violence which had destroyed a bridge upon the logging railway of the Lumber Co. The court held that the receiver was not liable for the demurrage, and refuted the theory of the plaintiff that a shipper must pay demurrage under all circumstances, in the following lucid statement:

"The diligence of counsel has not discovered, nor have we found any decisions reaching the exact point. We think it is a mistake to suppose, as counsel do, that the Interstate Commerce Commission has upheld the liability to pay demurrage under such circumstances. Each of the cases cited from its reports depended upon some other point. The question must therefore be decided upon the applicable general principles. We think it is a safe statement of the general rule to say that when a duty is imposed by law and its performance becomes impossible because of an act of God, there can be no recovery of damages for the breach; and it is not important whether this is merely a legal rule for the assessment of damages, or whether, whenever law imposes a duty, it implies such an exception."

This decision is not only supported by the great weight of authority, but is consonant with common sense and justice. Laws must be construed in the light of the purpose for which they were enacted. "Reason is the life of the law." The penalty for undue delay in unloading cars was imposed to

promote the efficient service of railroads. It was designed to prod the slothful shipper and not to oppress one who is unable to perform by reason of a *vis major.*

The same *general principles* which the Federal Court found applicable in the White Lumber Co. case apply to the one now before us. True, in that case the relief was granted because of the act of God, and here the relief is sought because of the act of man. We see no reason, however, to distinguish in this case between a storm of wind, lightning, and rain, and a storm of human passions. We find no cause to differentiate here between a flood of waters and a flood of men. This "armed march" was a human tide before which the defendants were as helpless as before elemental storm and flood.

The judgment of the lower court is therefore affirmed.

*Affirmed.*