NORFOLK SOUTHERN RAILWAY COMPANY, Successor to M. S. HAWKINS and L. H. WINDHOLZ, Receivers of NORFOLK SOUTHERN RAILROAD COMPANY, v. W. D. GLOVER, Trading as W. C. GLOVER.

(Filed 24 February, 1943.)

**1. Carriers § 8—**

Generally it is the duty of the consignee to unload cars within the free time given by the published tariffs of the carrier, and the obligation to pay demurrage for their detention is classified with other duties and obligations imposed by law, and, where the failure of the consignee to unload within the free time is caused entirely by a *vis major*, the consignee is not liable for demurrage.

**2. Same—**

In an action by a railroad against a shipper to recover demurrage for failure of defendant to unload car, evidence of defendant, that he bought soybeans for export in 1939 and 1940 and that due to the war abroad ships could not be had in which to load the beans, shows only that unloading was rendered unpracticable, unprofitable and expensive but not impossible, and it does not make out a case of *vis major*.

Appeal by defendant from *Hamilton, Special Judge,* at October Term, 1942, of Pasquotank.

This action to recover demurrage charges for failure to unload certain cars within the time permitted by the tariffs of the company published as provided by law was originally instituted by the receivers of the plaintiff railroad company, who were subsequently succeeded by the company itself as plaintiff upon the vacation of the receivership and the restoration to it of all property and claims of the company.

The demurrage sought to be recovered is alleged to have accrued upon certain freight cars ordered from the plaintiff by the defendant to move soybeans from the area of Elizabeth City, North Carolina, in interstate commerce, to Norfolk, Virginia, for foreign export. The total amount sought to be recovered was $765.60, with interest, composed of $399.30 accruing between 7 December, 1939, and 23 January, 1940, and $366.30 accruing in November and December, 1940.

R. R. *v.* GLOVER.

A stipulation was entered into by the parties, plaintiff and defendant, to waive jury trial and authorize the court to find the facts, make its conclusions of law, and enter judgment accordingly.

Prior to entering judgment the court announced that it "would hold that there was no sufficient evidence introduced or offered upon which a finding of fact could be predicated that the demurrage, either in whole or in part, was occasioned by or was the result of war or other circumstances which would excuse or relieve the defendant of the demurrage charges as set out in the complaint." To this holding the defendant preserved exception.

From judgment entered by the court that the plaintiff recover of the defendant the sum of $765.60, with interest, the defendant appealed, assigning error.

*J. Kenyon Wilson for plaintiff, appellee.*
*John H. Hall for defendant, appellant.*

SCHENCK, J. It may be stated as a general proposition of law that the duty of a consignee to unload cars within the free time given by the published tariffs of the carrier, and the obligation to pay demurrage for their detention, are classified with other duties and obligations imposed by law, and, where the failure of the consignee to unload within the free time is caused entirely by the intervention of a *vis major,* the consignee is not liable for demurrage. *Chesapeake & Ohio Ry. Co. v. Board,* 100 W. Va., 222, 130 S. E., 524, 44 A. L. R., 826.

In the case at bar there was evidence to sustain the allegations of the complaint that the cars were ordered out by the defendant and were furnished by the plaintiff, and that there was a failure on the part of the defendant to unload the cars within the free time allowed by the company's published tariffs, but the defendant averred, and relied thereupon as a defense, that he was prevented by a *vis major,* namely, war, from unloading and releasing the cars involved in time to avoid demurrage. Therefore, we have presented the question: Was there sufficient evidence upon which to predicate a finding that the failure to unload the cars within the free time allowed by the published tariffs of the railway company resulted from war? We are of the opinion, and so hold, that the answer is in the negative.

While his Honor announced he would hold that there was not sufficient evidence upon which to predicate a finding that the demurrage was "occasioned by or was the result of war or other circumstances which would excuse or relieve the defendant of demurrage charges," the only circumstance urged on the appeal as an excuse was war.

The evidence of the defendant is to the effect that he bought soybeans for shipment to Norfolk for foreign export, that due to war ships could not be had at Norfolk in which to load and export the beans, that the elevators in Norfolk were filled, and his own warehouses in Elizabeth City were filled, and for these reasons he could not release the cars upon which the beans were loaded. While even if these facts be conceded, they only tend to establish that the defendant was confronted with an inconvenience or unpracticable or unprofitable procedure, and not with a condition impossible of relief. There is no evidence that he could not have rented other warehouses than his own in Elizabeth City, or other places than the elevators at Norfolk for storage. The most that the record discloses is that the retaining of the beans in the cars and the consequent delay and demurrage was the result of the inconvenience and expense of unloading and storing them. The impossibility of unloading the beans is not made to appear.

The defendant relies upon *Chesapeake & O. R. Co. v. Board, supra,* wherein the defendant was relieved of liability for demurrage charges because he was prevented from unloading sand and slag from the cars involved by armed resistance incident to a strike, known as "Armed March." That case is distinguishable from the case at bar in that the defendant therein was actually forbidden to and prevented from unloading the cars by armed resistance, which rendered the unloading of the cars impossible, notwithstanding his *bona fide* efforts to so unload them; whereas in the case at bar while the unloading may have been rendered unpracticable, unprofitable and expensive by the inability to procure ships, such unloading, so far as the record discloses, was not rendered impossible. Our case resembles more closely the facts involved in Ruling 358 of the Interstate Commerce Commission cited in *Chesapeake & O. R. Co. v. Board, supra,* wherein it was held that the defendant could not escape demurrage charges upon cars loaded with coal because the arrival of vessels in which to unload the coal was delayed by storms. The Court says: "The facts upon which this ruling was made do not present a situation of impossibility of performance. The delay in the arrival of the vessels was caused by an 'Act of God,' but the coal designed for the vessels might have been unloaded from the cars and reloaded on the vessels upon their arrival. This procedure would have been costly and unpracticable, perhaps, but it was nevertheless possible."

The evidence in the case at bar fails to disclose that it was impossible for the defendant to unload the beans and thereby release the cars—in truth, it fails to disclose that there was a necessity for loading the beans on the cars at the time and place they were so loaded. The most that the evidence tends to disclose is that it may have been convenient to load the beans on the cars at the time and place they were loaded, and

it may have been inconvenient, unpracticable or unprofitable to unload them. This would not support a finding of fact that "the demurrage, either in whole or in part, was occasioned by or was the result of war or other circumstances which would excuse or relieve the defendant of the demurrage charges," and therefore there was no error in his Honor's holding that there was no sufficient evidence upon which to predicate such a finding.

While it may be conceded that a *vis major* may relieve a consignee from liability for demurrage, and while a war in which this country is engaged may be such a *vis major,* or the actions of belligerent nations opposing this country may be the "acts of the public enemy," still at the time the demurrage involved in this action accrued, in 1939 and 1940, this country was not at war and there were no "acts of the public enemy." Hence a finding of a fact to the effect that the defendant was relieved of demurrage charges by war or acts of the public enemy or a *vis major* would not be sustained by the evidence.

For the reasons given, the judgment of the Superior Court must be sustained, and it is so ordered.

Affirmed.