(No. 4614—

GUY A. THOMPSON, TRUSTEE OF MISSOURI PACIFIC RAILROAD COMPANY, DEBTOR, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1957.*

WALKER AND WILLIAMS, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

Claim was filed in this Court on behalf of Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, on March 23, 1954.

The record consists of the following:

Complaint.
Motions for extensions of time in regard to filing pleadings.
Departmental Report.
Transcript of evidence.
Statement, brief and argument of claimant.
Statement, brief and argument of respondent.
Commissioner's Report.

It is a claim for demurrage charges for coal delivered to the Illinois State Penitentiary at Menard, Illinois. The dates involved are between September 19, 1952 and October 6, 1952, when various and sundry cars of coal were delivered to the penitentiary. The cars were kept in the custody of respondent, and on the tracks of said penitentiary on the various dates set forth in the complaint. The dates the cars were placed on the tracks, unloaded, and made available for removal were also set forth.

The tariff charges for intrastate shipments, published and in full force and effect at the various times mentioned, are set forth in exhibit A, attached to the complaint and made a part thereof. The authorized demurrage charges were also set forth for each particular car, the total amounting to $342.00, which is not disputed by respondent.

It is not disputed, and so found by the Commissioner, that the delay in the unloading of the cars was caused by a riot of the inmates at the penitentiary on September 22, 23, 24 and 25.

The present warden at the penitentiary was not the warden at the time the demurrage charges were incurred,

and the bills for demurrage were not transmited to him prior to September 30, 1953, when funds for the 67th General Assembly lapsed, which is the reason they were not paid.

As found by the Commissioner, there is very little dispute as to the facts. There is no question but what the cars were spotted on the tracks in the penitentiary on the dates set forth in the complaint. There was a riot in the penitentiary during said period of time, and the cars were not unloaded due to the riot on the dates set forth in the complaint, and hereinabove referred to. The charges made for demurrage were proper, and were on file with the Illinois Commerce Commission. The computations were correct, and proper charges were made in accordance with the exhibits attached to the complaint and made a part thereof. Furthermore, respondent does not dispute the correctness of the charges, but only questions the liability of respondent due to the fact that the delay in unloading, which caused the demurrage, was due to the riot, which was beyond the control of the agents of respondent.

The Commissioner submitted the matter to this Court, because there was a question of law to be decided, and made no findings in regard thereto.

Respondent cites the case of *Illinois Central Railroad Co.* vs. *State,* 18 C.C.R. 214, where the proposition that a contract for the payment of demurrage charges with the state is null and void unless expressly authorized by law. There is no question in our mind but what the demurrage charges, as set forth in the complaint, were authorized by law, and are correct charges.

In the second point of its brief, respondent calls attention to the following cases:

*Southern Railway Co. vs. White*, 284 F. 560.
*Chesapeake & Ohio Railway Co. vs. Board*, 100 W. Va. 222;
130 S. E. 525; 44 A.L.R. 826.

These cases fall under the proposition that the obligation to pay demurrage is imposed by law, and payment is excused when the delay is caused by the intervention of a ''vis major'', such as an insurrection.

Respondent in its argument states that it does not deny the loaded cars were delivered to the penitentiary; that the demurrage charges were in effect in the tariff on file with the Illinois Commerce Commission, and that the computation of the charges made by claimant is correct, since each car was identified, and the period of delay established by competent evidence introduced by claimant. Respondent also admits that the demurrage charges have not been paid.

It is further set forth that the only question remaining to be decided in this case is whether or not, under the law in force and the facts established by the record, the demurrage charges are legally due.

The question remains in respondent's mind as to whether or not the riot or the intervention of ''vis major'' excuses the payment of demurrage, and cites the case of *Chesapeake and Ohio Railway Company* vs. *Board*, 100 W. Va. 222. In this case it was held that the payment of demurrage was excused, and the court said:

"The same general principles, which the federal court found applicable in the White Case, apply to the one now before us. True, in that case the relief was granted because of an act of God, and here the relief is sought because of the act of man. We see no reason, however, to distinguish in this case between a storm of wind, lightning, and rain, and a storm of human passions. We find no cause to differentiate here between a flood of water and a flood of men. This 'armed march' was a human tide, before which the defendants were as helpless as before elemental storm and flood."

Claimant in his brief argues that a railroad is given no choice but to exact the payment of all charges prop-

erly accruing under its tariffs, as filed and approved by the Commerce Commission, and this rule applies to demurrage charges. It cites the case of *Davis* vs. *Keystone Steel and Wire Co.*, 317 Ill. 278, in which case the court said:

"Since the demurrage was a proper terminal charge for which the appellant was liable as a part of the transportation of the cars, it was payable by the appellant in accordance with the demurrage rules—and it was the duty of the appellee to collect it unless the existence of the strike excused the payment. The rules make some exceptions to demurrage charges, such as in the case of certain weather conditions, delay or irregularity of the carrier in delivery, resulting in the bunching of cars, errors in notice or other railroad errors, none of which apply to the circumstances of this case, but no mention is made of failure to load or unload because of a strike. . . . The duty to unload is, therefore, absolute in the absence of the expressed exceptions."

The case cited was decided at a time when the tariffs contained no provision in relation to strikes, and it stands for the proposition that, unless the excuse for payment can be found within the exceptions contained in the tariff, the duty to pay is absolute.

There is a vast difference betwen a struck plant and a riot of the inmates of a penitentiary, as the inmates are not employees of respondent. The act of employees striking is a legal one, whereas the riot of the inmates in a penitentiary is an unlawful act. If it had been the intention to excuse the payment of demurrage in the case of riots, such an exception should have been placed in the tariff.

It is also found that, except for the eight cars, which were located within the plant during the riot, the remainder of the cars arriving were placed on the penitentiary's private tracks where they could have been unloaded by employees at the penitentiary, so that no demurrage would have accrued on such cars. The biggest delay, which resulted in the bulk of the accrued demurrage, arose not because of the riot, which lasted from

446

September 22 to September 25, but because of the delay in getting back to work after the riot had subsided.

In *Words and Phrases,* volume 44, page 314, we find "vis major" being defined in many ways, and it appears throughout that it is not applicable to the case in question. In the majority of the cases, it was defined as something, which results immediately from an actual cause without the intervention of man, and could neither have been prevented by the exercise of prudence, diligence and care, nor the use of those appliances, which the situation of the party renders it reasonable that he should employ. Story defines "vis major" to be any irresistible natural cause, which cannot be guarded against by the ordinary exertions of human skill and prudence.

It is, therefore, the opinion of this Court that an award should be made for demurrage charges to claimant in the sum of $342.00.