[Civ. No. 766.   Third Appellate District.—December 8, 1910.]

# CALIFORNIA NATIONAL BANK, Respondent, v. T. J. WELDON, Appellant.

LOST INSTRUMENT—BURDEN OF PROOF—RIGOR OF COMMON LAW RELAXED—REASONABLE DILIGENCE—LIBERALITY OF COURTS.—Though the burden of proof is upon the plaintiff to show the loss of an instrument relied upon by him, yet the rigor of the common law in making such proof has been relaxed, and the nonproduction of such instrument is now excused for reasons more general and less specific, and upon grounds more broad and liberal than were formerly admitted. When there is no suspicion hanging over the instrument, all that ought to be required is reasonable diligence to obtain the original, and the courts in such cases are extremely liberal.

ID.—SUFFICIENCY OF PROOF OF LOSS—MATTER FOR TRIAL COURT—DISCRETION—REVIEW UPON APPEAL.—It is for the trial court to determine the sufficiency of the proof of loss of an instrument and of the search therefor. Since much is left to its discretion, the appellate court will not review its rulings in this respect unless the proof is manifestly insufficient to warrant secondary evidence.

ID.—LOSS OF CHECK—ADMISSION AND PROOF OF CONTENTS—PAYMENT BY BANK—LOSS IN TRANSMISSION.—Where the contents of a lost check were both admitted by defendant and fully proved, and the check was drawn upon his bank at Ukiah and sent to the payee at Klamath Falls, Oregon, and was there cashed by a local bank, and remitted to plaintiff bank, which credited the paying bank therewith, and sent it with instructions to the Ukiah bank, keeping a copy of each, and it was lost in transmission, and plaintiff endeavored without effect to trace and locate the same, the proof of its loss was sufficient to admit proof of its contents.

ID.—INCLOSURE OF OTHER LOST CHECKS—IDENTITY OF PARTICULAR CHECK—EVIDENCE—BANK RECORDS—COURSE OF BUSINESS—UNDISPUTED LOSS.—Where the letter inclosing the lost check also inclosed other checks, which were also lost, and the witnesses from plaintiff bank had no independent recollection of the particular lost check, but testified to the identity from the records of the bank, and to its transmission from its unvarying course of business, and its self-interest would impel it to make prompt disposition of the particular check, which its records show was done, and there was evidence tending to show that it was lost in its transit, this court is not at liberty to review its sufficiency, especially as there is not the slightest evidence to controvert the fact of loss.

ID.—PRESENTMENT AND NOTICE OF DISHONOR OF LOST CHECK NOT RE-
QUIRED.—There can be no notice of dishonor without presentment,
and if presentment is excused so also is notice of dishonor. Aside
from the statutory provision that neglect of presentment is subject
only to the extent of injury suffered, which does not appear to exist,
the rule of presentment and notice of dishonor does not apply to
a lost check, in order to institute an action thereon against the
maker of the check by an indorsee of a bank which has paid the
check to the payee.

ID.—PRESENTMENT OF LOST CHECK FRUITLESS—COMPLIANCE IMPOSSIBLE.
No law would require a bank to pay out the money of its depositor
on an alleged lost check, and a demand that it do so would be
fruitless. Its obligation is only to pay the depositor's money to
holders of checks produced to the bank for payment therefrom,
to be surrendered before payment is made. Where a check is lost
without the fault of the plaintiff, while in transit, the rule requir-
ing a presentment cannot be complied with, and compliance there-
with being impossible, plaintiff's failure to present the check is not
fatal to his right to recover thereon against the maker.

ID.—PRESENTMENT A DUTY IMPOSED BY LAW—IMPOSSIBILITY A GROUND
OF RELIEF.—Presentment is a duty imposed by law, in certain
cases; and a person will be relieved from the performance of such
duty where its performance is rendered impossible without the
plaintiff's fault.

ID.—HARDSHIP NOT IMPOSED UPON DRAWER OF CHECK—POWER OF PRO-
TECTION.—No hardship results to the drawer of the check by non-
presentment. If the check is non-negotiable, he may protect
himself by notice to the bank, and if negotiable, he may insist
upon indemnity against loss from another *bona fide* holder of the
check.

ID.—ABSENCE OF INJURY TO PLAINTIFF FROM NONPRESENTMENT—FULL
INDEMNITY TENDERED.—Where defendant suffered no injury from
nonpresentment of the check, and plaintiff tendered full indemnity
for his protection against loss from any other holder of the lost
check, and against any lawful claim thereon, the plaintiff had the
right of recovery thereon as against the drawer of the check without
presentment.

ID.—LOSS BY PLACING MONEY IN INSOLVENT BANK—IMPROPER COUNTER-
CLAIM.—The defendant could not counterclaim damages for having
deposited part of his money in a bank which became insolvent.
Plaintiff cannot, upon any principle, be held liable for defendant
having placed money in such bank.

APPEAL from a judgment of the Superior Court of Men-
docino County, and from an order denying a new trial. J.
Q. White, Judge.

The facts are stated in the opinion of the court.

T. J. Weldon, and W. D. L. Held, for Appellant.

George & Hinsdale, and Mannon & Mannon, for Respondent.

CHIPMAN, P. J.—The action is to recover the amount of a lost check drawn by defendant upon Commercial Bank of Ukiah and payable to J. B. Melton or order for $2,000. Judgment is prayed for the said amount of $2,000, with legal interest from September 20, 1909.

A demurrer for insufficiency of facts and for uncertainty was overruled and defendant answered, denying specifically most of the averments of the complaint; avers that he has offered to draw a duplicate check for said amount "on condition that due and proper presentation of the original thereof be made to said Commercial Bank of Ukiah," and if not paid when thus presented defendant will pay the same on notice of nonpayment or will issue a duplicate check; avers also that he has not paid the amount of said check, "and he now refuses to do so and has at all times refused to do so unless assured that he will not be called upon to again pay the same, and this defendant is now unwilling and at all times has been unwilling to accept from said plaintiff any bond or indemnity conditioned as set out in plaintiff's first amended complaint."

Defendant then sets forth special defenses, covering some seventy-five folios of the transcript, which may be briefly summarized:

1. That Melton, the payee of the check, made no other or further indorsement than as alleged in the complaint, and that it was the only indorsement thereon; that no notice of the alleged loss of said check was ever given by plaintiff, or other person, to the Ukiah bank, the drawee therein named, or to any other person, except that on December 26, 1907, defendant was notified that said check was lost in the mails, and no notice prior thereto was given defendant, nor was said Ukiah bank ever notified to refuse payment.

2. "Alleges that on the twelfth day of September, 1907, he (defendant) drew his check No. 730 on the Commercial Bank

of Ukiah, in the county of Mendocino, state of California, for $2,000, payable to one J. B. Melton or order''; that at no time did defendant' request or direct plaintiff to pay said check.

3. Alleges the issuance of said check as last above stated; that at said time to and including November, 1907, defendant had sufficient funds in said bank to pay the same, and on presentation said check would have been paid at any time since said September 12, 1907, ''and up to the present time''; that said bank has at all said times been solvent, and would have paid said check on presentation; but plaintiff has failed to present the same.

4. Alleges the issuance of said check; that defendant had at all times in said bank funds to pay the same upon presentation, and presentation has not been prevented by any cause whatever, but the same has never been presented for payment to said bank; that defendant' has never been notified that payment was refused by said bank or has been dishonored and no notice of dishonor has been given defendant and such notice was not excused; and that defendant's residence was well known to plaintiff.

5. Alleging the foregoing facts, defendant sets forth a further defense that about September 12, 1907, when he issued said check, the condition of the banks in the state ''was such as to cause serious apprehension and alarm to the depositors therein, and this defendant, as a depositor in the Commercial Bank of Ukiah, did feel unwilling to retain therein any sum largely in excess of $2,000''; that he made inquiries of said bank during the months of September and October, 1907, and was told that said check had not been presented; that being unwilling to leave in said bank any sum in excess of $2,000, and because said check had not been presented for payment, he drew out of said bank various sums aggregating $3,000, and on October 31, 1907, deposited $1,831.03 in the California Safe Deposit and Trust Company, which, by reason of its failure, was lost to defendant.

6. Alleges many of the foregoing facts and particularly the facts last above set forth and presenting substantially the same defense as therein set forth.

7. A similar defense is repeated, by way of counterclaim, further alleging that said California Safe Deposit and Trust

Company is insolvent, and that he had lost the whole of said $1,831.03.

8. Likewise sets forth substantially the same defense, by way of cross-complaint, stating further that defendant has at no time received any part of said $1,831.03, but the whole thereof has been lost to him and he has been damaged in that amount.

Defendant prays that plaintiff take nothing by its action, and that he recover judgment against plaintiff for the sum of $1,831.03, with legal interest from October 31, 1907.

A motion was made to strike out all that part of the answer relating to the counterclaim and cross-complaint, on the ground that the same is redundant, irrelevant and not pertinent to any issue presented in the complaint. Plaintiff also demurred to certain portions of the answer. These portions are designated in the motion by certain lines and pages of the answer, as filed in the action, but they are not identified by reference to folios or lines in the printed transcript. It sufficiently appears, however, that the motion is aimed at the averments touching the counterclaim and cross-complaint, while the demurrer runs to certain averments in all the several causes of defense except the first. The motion was granted and the demurrer sustained.

The cause was tried by a jury, and plaintiff had the verdict, on which judgment was entered for the amount claimed in the complaint. Defendant appeals from this judgment and from the order denying his motion for a new trial.

Defendant was called as a witness for plaintiff and testified that he drew a check, dated September 12, 1907, on Commercial Bank of Ukiah, in favor of J. B. Melton, for $2,000 and mailed it to him at Klamath Falls. The check stub identified by witness showed that the number of the check was 730, drawn in favor of J. B. Melton, and was dated September 12, 1907. Defendant, in due course of mail, received a letter from Melton, of date December 6, 1907, acknowledging receipt of the check, and stating that he cashed it on September 20, 1907, at the Klamath County Bank; also stating that he had been notified by the bank that the check was lost, adding: "Please look this matter up and let me know at once."

Witness Martin, cashier of the Klamath County Bank, testified that the bank received a check for $2,000, drawn by de-

14 Cal. App.—49

fendant on Commercial Bank of Ukiah, about September 20, 1907, on which the bank paid the payee, Melton, its face value. It also appeared from the testimony of this witness that this check, with two other remittances, was sent to plaintiff and acknowledgment of its receipt by plaintiff was returned of date September 23, 1907. Assistant Cashier Brown of plaintiff bank, who had charge of all the bank correspondence and the general routine of the business, testified that upon receipt of the check plaintiff credited the Klamath County Bank, on September 22d, and on September 23d a letter of remittance was sent to the Bank of Ukiah, inclosing the check in question and two others, one for $15.50 and one for $29.37. A copy of this letter is in evidence. The witness testified: "I do not know where the check in controversy is. At the time the check was sent to the Bank of Ukiah, a letter of instructions was sent also, of which I have a copy, the original being lost in transit, and it was never heard from again, although we have endeavored to trace it and locate it."

Plaintiff, hearing nothing from its remittance, sent to its correspondent, the Bank of Ukiah, what is called a "tracer," informing the bank of the remittance of September 23d and asking for reply. To which, on October 3, 1907, the bank answered "This above rem. must have gone astray, as we have not received it." Plaintiff, the next day, sent idemnity bonds, covering security for the three remittances and asking the bank to obtain duplicate checks from the drawers, as all three remittances were lost. October 8, 1907, the Bank of Ukiah reported sending duplicate check for one of the remittances, but stating that the other parties were unknown there and asking further information. It appears that the $2,000 check was listed at plaintiff bank as having been drawn by F. H. Sheldon, by mistake of the clerk in deciphering the name of the drawer. Thereupon considerable correspondence ensued between the plaintiff and the Klamath County Bank, in an effort to ascertain who the drawer was, and from Melton it was finally learned that defendant was the drawer. Witness Brown testified that as soon as plaintiff found out that defendant was the drawer of the check, he wrote Weldon, care of Weldon & Held, a law firm of which defendant was a member, of date December 20, 1907, informing him of what he had learned from the Klamath County Bank; that the check had been lost

in transit between Sacramento and Ukiah, and asking defendant's aid "in getting this matter straightened out." Weldon & Held replied, December 21, 1907: "We beg to say that on September 12, 1907, T. J. Weldon drew his check No. 730 on Commercial Bank of Ukiah, for $2,000.00, in favor of J. B. Melton, and on the same day sent it to Mr. Melton at Klamath Falls, Oregon. On November 9, 1907, the last time his pass book with the Commercial Bank was balanced, this check had not been paid." Thereupon plaintiff wrote Weldon sending him an indemnity bond in the sum of $4,000, and requesting him to send plaintiff duplicate check for the amount of the original. Many letters passed between the parties on the subject, the plaintiff endeavoring to convince defendant that it was his duty to send it a duplicate check or deposit the amount in controversy in the Commercial Bank of Ukiah. Defendant steadfastly refused, and finally, January 11, 1908, wrote as follows: "Since no proof of the loss of the check has been made, I must adhere to my original views not to issue a duplicate until the proof of the loss of the check is established to my satisfaction and to such an extent as will protect me against its further presentation. For that reason, I am returning herewith your indemnity bond." Mr. Brown thereupon sent to the Bank of Ukiah an indemnity bond in favor of defendant for $4,000, and inclosing an affidavit of the cashier of the plaintiff bank to the effect that the sureties on the bond were men of wealth, and requesting the cashier of the Ukiah bank to again present the same to defendant and request his duplicate check. Defendant, in reply to the offer, was unwilling to further discuss the matter, but declined "to do anything in the matter until proof of the loss of the check was established to *his* satisfaction. When it was suggested that the proof was before him, he replied, 'That is their side of it.'"

On cross-examination Mr. Brown testified to the routine method pursued in the bank in managing the business of the day and the steps taken from the receipt of checks and their remittance by post to the banks where they should go; he had no independent recollection of this particular check, and his statement that it had been mailed to the Bank of Ukiah, and was lost, was based upon the records of the plaintiff bank; nor

was he willing to testify that the Commercial Bank of Ukiah had been notified to refuse to pay the lost check.

Witness Holmes, remittance clerk of plaintiff, testified that he wrote up the remittance letters of September 23, 1907, including the one to the Bank of Ukiah. "After writing the remittance letter, I indorsed the checks and put the letter in an envelope, addressed to the Bank of Ukiah, and put it in the mail sack in which we carry all the mail from the bank to the postoffice after the day's work. . . . I wrote up all the remittances to the Bank of Ukiah on September 23, 1907, and in depositing the envelopes in the mail-bag, I know they were properly stamped and postage prepaid." On cross-examination he testified: "My attention was first directed to the loss of this check about seven days after the remittance was sent. We generally give seven days after sending a remittance, and after that time we keep sending out tracers, and I did so in this instance. . . . I could not describe the particular check in controversy, and I have no positive knowledge myself that I mailed an envelope that contained this check. I cannot remember that far back that I mailed the letter containing this check. All the envelopes we use in the bank are stamped envelopes." He further testified that he had no independent recollection of this check or of any envelope containing it being put into the mail-sack. . . . "At that time, in September, 1907, the mail-bag was accessible to anyone behind the railing, and the bag was usually carried to the postoffice about 4 or 5 o'clock, although I do not know whose duty it was to carry it, but do know it was one of the clerks in the bank." On re-examination he testified: "We sent out tracers for all the items covered in the remittance described as defendant's exhibit 4 (the same as alleged to have been remitted to the Bank of Ukiah), and none of them ever showed up, and none of the checks of that remittance were ever found. I have testified here from the records as they were made up by me on that date."

Cashier Thomas of the Commercial Bank of Ukiah testified that the check in controversy was never received by that bank. It further appeared that the check was never presented to the Ukiah bank. "There was a general agreement that the defendant might overdraw his account." It also appeared that

the Klamath County Bank had assigned to plaintiff all its interest in said check.

Defendant excepted to the giving of certain instructions and presented thirty instructions, all of which, except numbers 14, 17, 18 and 19, the record shows were refused by the court. As to the numbers above mentioned it does not appear whether they were given or refused, and they cannot, therefore, be made the subject of examination now. The instructions requested and refused, and to which ruling defendant excepts, were drawn to meet the various phases of his defense set out in the answer, but stricken out by the court.

Defendant now urges: 1. That the evidence of the loss of said check is insufficient; 2. That the court erred in excluding the defenses raised by the answer, and on motion stricken therefrom. The questions involved in this part of the answer are stated by defendant to be as follows:

(a) Whether presentment of the check to the drawee bank was necessary before the drawer could be held;

(b) Whether notice to the drawer of the dishonor of the check was necessary before the drawer could be held;

(c) Whether the damages alleged to have been suffered by defendant constituted a defense;

(d) Whether such damages entitled defendant to relief.

Upon the first proposition defendant contends that the burden of proving loss of the check is upon plaintiff, and that such loss must be proved by more than the preponderance of the evidence and beyond a reasonable doubt, and the evidence should be the same as that introduced as the foundation for secondary evidence (citing 17 Cyc. 539; 25 Cyc. 1624, 1626, 1627); that plaintiff must have exhausted in a reasonable degree all accessible sources of information and means of discovery which the nature of the case would suggest; and a diligent and *bona fide* search must have been made for the lost instrument in the place where it belongs or is most likely to be found. (17 Cyc. 543; 1 Greenleaf on Evidence, sec. 558, and numerous cases, among them *Kenniff* v. *Caulfield,* 140 Cal. 34, 41, [73 Pac. 803].)

1. Where secondary evidence of the contents or nature of a lost instrument is sought to be introduced, the rule is as stated in *Kenniff* v. *Caulfield,* 140 Cal. 34, [73 Pac. 803], and as claimed by defendant. In the case cited the question was

whether the conveyance was a grant, bargain and sale deed or a deed of gift. The proof of loss consisted of a search being made in a bureau drawer where the deed had been for seven months before it was missed, and nowhere else, and it was held sufficient to raise a presumption of its loss. The court, in discussing the rule, said: ''The rigor of the common law . . . has been relaxed in this respect, and nonproduction of instruments is now excused for reasons more general and less specific, and upon grounds more broad and liberal than were formerly admitted. If any suspicion hangs over the instrument, or that it is designedly withheld, a rigid inquiry should be made into the reasons for its nonproduction. But where there is no such suspicion, all that ought to be required is reasonable diligence to obtain the original—in fact, courts in such cases are extremely liberal. And the rule in questions of this character is, that the trial judge is to determine the sufficiency of the proof. Under the facts and circumstances developed in the case, if they are sufficient to reasonably satisfy the mind of the court that the original is lost, and that it cannot be found after search made at the proper place, that is all that is necessary, and the sufficiency of the proof of the search being in general left to the discretion of the trial judge, this court will not review its rulings in that respect, unless the proof is manifestly insufficient to have warranted secondary evidence.'' The rule, it will be seen, finds application where it is sought to introduce secondary evidence to establish the execution or nature of the instrument. But here no such question arises. The issuance of the check by defendant is admitted by him, and it is clearly shown that the payee received it and got from the Klamath County Bank its full face value, and defendant has thus discharged his obligation to the payee, whatever that was. It is shown to have been forwarded to plaintiff by that bank, and that plaintiff pursued its customary course in all such cases by writing a letter of remittance to the Commercial Bank of Ukiah, the drawee, inclosing in it the check in question and depositing the letter in the bank mail-pouch to be deposited in the postoffice, with other mail matter of that day, postage prepaid; that all matter of the bank was sent to the postoffice daily about 4 or 5 o'clock P. M., and that up to the date of the trial, November, 1909, the check had not been seen or located and has never been presented to the drawee bank for payment. In

the letter of remittance were two other checks, on different banks, which also went astray and have not since been found. It is true that the witnesses were unable to testify to an independent recollection concerning this particular check, and testified principally from the bank records and from an unvarying custom in conducting the bank business. But it is also true that plaintiff had no interest in concealing or withholding this check; on the contrary, every consideration of self-interest would impel it to make prompt disposition of the check in the usual method and course of business, which the bank records show was done. We think it would be wholly unreasonable to hold the evidence entirely insufficient to show that the check is lost; and if there was some evidence, as there certainly was, tending to show its loss, this court is not at liberty to review its sufficiency, especially as there was not the slightest evidence tending to controvert the fact of loss. (*California Elec. L. Co.* v. *California Safe Dep. & Trust Co.*, 145 Cal. 124, [78 Pac. 372].)

2. It is also urged that presentment and notice of dishonor were necessary to recovery, notwithstanding the loss; and in this connection it is urged that the proof of loss was not sufficient to excuse presentment and dishonor. Upon this latter point we can see no reason why the rule should be more rigid than where secondary evidence is offered to prove execution, upon proof of loss. In our opinion, if presentment and dishonor may be excused in cases of loss at all, the proof is sufficient. The question, then, is, In cases of loss must there be presentment and notice of dishonor?

There can be no notice of dishonor without presentment, and it must follow that if presentment is excused so also is notice of dishonor.

Defendant constructs his argument as follows: A check is a bill of exchange. (Civ. Code, sec. 3254.) The rights of the drawer of a check are the same as those of the first indorser. (Civ. Code, sec. 3177.) The first indorser of a bill of exchange, and hence the drawer of a check, can be called upon only to pay after notice of dishonor. (Civ. Code, sec. 3116.) Notice of dishonor is excused in certain cases, but loss of the instrument is no excuse. (Civ. Code, sec. 3155.) And *Bank of Gilby* v. *Farnsworth*, 7 N. D. 6, [72 N. W. 907, 38 L. R. A. 843], is cited as holding, under a section identical with section 3213 of our Civil Code, that presentment is necessary where

the bill has been lost; also 1 Parsons on Notes and Bills, page 530, is cited to the effect that as the loss of a bill can be no excuse for want of presentment and demand, so it can be none for want of notice. Same author also, at pages 368 and 448, holding that if the bill is lost it is sufficient to make demand and presentment with a true copy. Having shown, as is contended has been done, that loss of a check does not excuse its presentment, the next step in the argument was to show the effect of such failure to present and give notice. This step is thus taken: By the provisions of section 3255, Civil Code, the provisions of section 3213, Civil Code, become applicable to checks required to be transmitted to another place for presentment. Section 3213 reads: "If a bill of exchange, payable at sight or on demand, without interest, is not duly presented for payment within ten days after the time in which it could, with reasonable diligence, be transmitted to the proper place for presentment, the drawer and indorsers are exonerated, unless such presentment is excused." Bearing in mind that a check is a bill of exchange, presentment of a bill of exchange is excused only in cases mentioned in section 3220, none of which exist here. Hence, failure to present was a valid defense, and, such failure being shown, defendant is exonerated.

The weakness of the argument, as we conceive it, lies in defendant's failure to give due effect to section 3255, which provides that: "A check is subject to all the provisions of this code concerning bills of exchange, *except* that: 1. The drawer and indorsers are exonerated by delay in presentment, only to the extent of the injury suffered thereby." Section 3213 relates to bills of exchange to the provision of which a check is subject "only to the extent of the injury which they (the drawer and indorsers) suffer thereby." (Civ. Code, sec. 3255.)

It seems to us that this explains why the North Dakota case, *supra,* and the case of *R. H. Herron Co.* v. *Mawby,* 5 Cal. App. 43, [89 Pac. 872], cited by defendant, do not apply, for in each of those cases the drawer suffered injury through the negligence of plaintiff, the drawee bank, in each case, having, during the negligent delay in making presentment, closed its doors.

Aside from the statutory provision alluded to, we think the question is rightly decided in *First Nat. Bank* v. *McConnell,* 103 Minn. 340, [123 Am. St. Rep. 336, 114 N. W. 1129, 14 L. R. A., N. S., 616]. The reasoning in that case is so clear and satisfactory to our minds that we think it should be decisive of the case here. It was an action on a lost check, and the facts were quite similar to the facts here. We give the opinion at some length, as the precise question seems not to have been heretofore decided in this jurisdiction:

"Counsel relies in support of the first contention upon the elementary principle that the holder of a check upon a bank has no recourse upon the drawer thereof until he has presented it to the bank upon which it is drawn and payment has been refused; that such presentment and refusal are essential preliminaries to the right of action against him. (2 Daniel on Negotiable Instruments, 1586; *Bradford* v. *Fox,* 39 Barb. (N. Y.) 203; *Farwell* v. *Trust Co.,* 45 Minn. 495, [22 Am. St. Rep. 742, 48 N. W. 326].) But that rule can have no application to a lost check. No rule of law with which we are familiar would require a bank, without the consent of the depositor, to pay out the money of its depositor, upon an alleged lost check, and a demand that it do so would be fruitless. Its obligation is to pay the depositor's money to holders of checks issued by him, and its protection, and the protection of all depositors, requires that the checks be produced and surrendered before payment is made. Until the check is presented, no liability attaches to the bank. (*Northern Trust Co.* v. *Rogers,* 60 Minn. 208, [51 Am. St. Rep. 526, 62 N. W. 273] ; 5· Cyc. 536.) Of course, liability might arise in the case of a lost check where the bank, after it had been duly notified of the issuance of the same and of its loss, permitted an insolvent depositor to withdraw all his funds against which the check was drawn. But that is not the case before us. The immediate inquiry here is whether the drawer is liable on his lost check to the owner thereof, where it was not, before the loss, presented to the bank for payment. We think there can be but one answer to this question. '*Impossibilium nulla obligatio est.*' The law never requires the doing of an impossible thing (*Dow* v. *Bank,* 88 Minn. 355, [93 N. W. 121]), though it often awards damages for a failure to perform express contract stipulations, where performance was rendered impossible

by reason of intervening overpowering causes other than an act of God. (9 Cyc. 627.) But the principle involved in cases of that kind does not apply to duties or obligations arising by implication of law. (*Paradine* v. *Jane,* Aleyn, 26; *School District No. 1* v. *Dauchy,* 25 Conn. 530, [68 Am. Dec. 371].) In other words, a person will be relieved from the performance of a duty imposed upon him by law, where the performance is rendered impossible by reason of causes for which he was not responsible, where he would not for similar reasons be relieved from express contract stipulations. The checks in question in the case at bar were lost without fault of plaintiff, and the rule requiring their presentment to the bank cannot be complied with. They were mailed to the Le Sueur bank for payment the day plaintiff received them, and were lost in transit. The duty to present them for payment is one imposed by law, not by express contract, and compliance therewith being impossible, plaintiff's failure to present them is not fatal to its right to recover thereon.''

After meeting the point that the checks operated as an equitable assignment of the defendant's funds in the bank to the payee, the court said:

''No hardship results to the drawer of a check in such a case. If it be non-negotiable, he can, upon notice of the loss, fully protect his interests by countermanding the order and stopping payment. (*Canterbury* v. *Bank,* 91 Wis. 53, [51 Am. St. Rep. 870, and note, 64 N. W. 311, 30 L. R. A. 845]; *Kahn* v. *Walton,* 46 Ohio St. 195, [20 N. E. 202]; *Egerton* v. *Bank,* 43 How. Pr. (N. Y.) 216; *Florence Min. Co.* v. *Brown,* 124 U. S. 385, [8 Sup. Ct. Rep. 531, 31 L. Ed. 424]; *Albers* v. *Bank,* 85 Mo. 173, [55 Am. Rep. 355].) If it be negotiable, and likely to reach the hands of a *bona fide* holder, he may insist upon indemnity before giving a new check, or otherwise paying the debt intended to be discharged by it. In the case at bar, plaintiff informed defendant of the loss of the checks, demanded payment thereof, and offered to indemnify him from loss, before the action was commenced; but he refused to make payment. As a condition to plaintiff's recovery, the court ordered a properly executed indemnity bond to be filed, by which all rights of defendant are fully protected. If the checks turn up in the hands of the *bona fide* holders, and the Le Sueur bank is compelled to pay them, the indem-

nity bond will stand as security for the amount paid for any loss that defendant may suffer in the premises.'' (See Civ. Code, sec. 3415.)

In the present case defendant suffered no injury by reason of the nonpresentment of the check, unless it be true that his loss of money deposited in the California Safe Deposit and Trust Company, may be so considered, which will presently be noticed. The Commercial Bank of Ukiah was at all times solvent and defendant had money there to meet his check, and, besides, he had an arrangement with the bank by which he could overdraw his account. Plaintiff not only tendered defendant an adequate indemnity bond and brought the same into court, but offered to deliver to defendant ''such other bond as the court may deem sufficient to indemnify the defendant against any lawful claim on the said check.''

3. Defendant bases his other defenses and his defense upon his counterclaim and his right to recover on his cross-complaint, upon the proposition that it was plaintiff's duty to make presentment of the check. He thus states his claim: ''In October, 1907, defendant being, by the negligence on the part of the holder of said check, exonerated from liability thereon, performed the acts on which he now bases another ground of defense herein, and on which he relies for his counterclaim and cross-complaint, all of which were excluded by the trial court.''

As defendant rests his contention that the court erred in striking out these defenses upon the claim that presentment of the check was essential, and as we have held against defendant upon this proposition, we see no necessity for discussing the points raised upon this branch of the case. We are unable to see how plaintiff can, upon any principle, under the circumstances, be held liable for defendant's having voluntarily placed money in the California Safe Deposit and Trust Company.

No other alleged errors seem to require notice.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 6, 1911.