[Civ. No. 2187.   Third Appellate District.—August 30, 1920.]

JOHN W. ULM, Respondent, v. CLARENCE M. PRATHER et al., Appellants.

[1] EVIDENCE—LOST PARTNERSHIP AGREEMENT—ACTION FOR ACCOUNTING—ADMISSIBILITY OF LETTER-PRESS COPY.—In an action for a partnership accounting, it having been shown that the original partnership agreement which was signed by plaintiff and the defendants, and which was kept by plaintiff, was lost, and could not be found, that the plaintiff and his wife had made diligent search for the same and neither of them were able to find it, that the duplicate of the original agreement signed by all the parties and which was kept by the defendants was destroyed in a fire which consumed their home and household goods, and that a copy which was left with a certain bank, which was unsigned by the

parties, disappeared and could not be found by the bank author-
ities, a letter-press copy of the agreement taken at the office of
plaintiff, where the original agreement was typewritten, and iden-
tified by plaintiff, is properly admitted in evidence.

[2] PARTNERSHIP — REPAIR OF FENCES — CREDIT FOR COST OF NEW
FENCES—CONSTRUCTION OF AGREEMENT. — Because the defendants
put in new wire fencing in place of posts that were rotted off
and boards that would not hold nails did not take that matter
out of the terms of their partnership contract with plaintiff, in
which it was provided that the defendant would look after and
care for all the buildings and improvements on or connected with
the ranch that was agreed to be operated and farmed on joint
account and would proceed, at once, as soon as the then present
crop was cared for, to place fences and all buildings in repair,
and that the materials for such repairs should be purchased in
joint account, but that the labor of placing said fences and build-
ings in repair should be done by or at the cost and expense of
the defendants, so as to entitle the defendants to credit for the
cost thereof.

APPEAL from a judgment of the Superior Court of
Siskiyou County. James F. Lodge, Judge. Affirmed.

The facts are stated in the opinion of the court.

Taylor & Tebbe for Appellants.

Tapscott & Tapscott and Collier & McNamara for Re-
spondent.

NICOL, P. J., *pro tem.*—This is an action brought by
plaintiff for an accounting and thereby a determination of
the amount to which the parties to this action are respec-
tively entitled by reason of a certain agreement of co-
partnership entered into by and between the plaintiff and
defendants on June 1, 1909.

The said agreement was to run from the said first day
of June, 1909, to the thirtieth day of September, 1913, and
provided for operating and farming on joint account the
premises ·known as the ''Shasta View Ranch,'' situate in
Siskiyou County, and containing about 2,600 acres of land.

The complaint alleges that the defendants did not farm
the land as provided for by the said contract and that plain-
tiff was damaged thereby in the sum of $6,780.70; that
plaintiff advanced money to the copartnership in the sum

of $3,289.70, and that the defendants owed the copartnership $3,850 for money drawn from the copartnership. The complaint further alleges that defendants removed from the property a large portion of the joint property of the parties to said agreement, without the consent of plaintiff and that plaintiff, by reason of the failure of the defendants to render monthly statements as provided in said contract, was unable to ascertain the true condition of affairs of the respective parties to said agreement on September 30, 1913, or since said date. The plaintiff asked for the appointment of a receiver, and a receiver was appointed, who sold the property belonging to the copartnership.

The defendants answered and filed a cross-complaint and upon the issues presented by the pleadings the case was tried and the court found that the plaintiff and defendants entered into the contract as described in the complaint; that on June 1, 1909, the plaintiff contributed to said copartnership property of the value of $3,729.72; that defendants at that time contributed property to the value of $1,212.10; that plaintiff on said date became a creditor of the copartnership in the sum of $2,517.62, which bore interest at the rate of six per cent per annum from June 1, 1909; that at the time of the commencement of the action plaintiff had made loans to the partnership, which had not been repaid and that defendants had removed from the "Shasta View Ranch" a large portion of the joint property of the parties to said agreement without the consent of plaintiff; that the amount received by defendants being $75 per month was $3,850, which, together with interest at six per cent per annum, amounted to $5,260.50; that by reason of the neglect of defendants the plaintiff was damaged in the sum of $500; that the net amount received from the receiver's sale totaled to $2,096.78.

The court rendered judgment for plaintiff in the sum of $3,021.49, and decreed that plaintiff have the money received from the receiver's sale of the property.

The defendants by their answer admitted entering into a written contract but denied that such agreement was the agreement described in plaintiff's complaint. The defendants claimed "that the said written agreement referred to in plaintiff's complaint and a copy of which is attached to said complaint and marked exhibit 'A' is not the legal and

true agreement which was entered into between plaintiff and defendants for the care and custody and management of said property, and in this regard these defendants show that they had an original of the true agreement entered into between plaintiff and defendants, but that the same was destroyed by fire on or about the month of July, 1913.''

[1] Appellants contend that the evidence was insufficient to sustain findings six, seven, nine, twelve, thirteen, fifteen, sixteen, seventeen, eighteen, and nineteen, their claim being that none of these findings can be upheld unless the contract as set out in the plaintiff's complaint be proved. It appears from the evidence that the original contract that the plaintiff had was lost and could not be produced and a duplicate original which defendants had was destroyed in a fire which consumed their home and household goods; plaintiff was therefore compelled to resort to secondary evidence, and appellants' contention is that plaintiff failed to make the proof required by law.

The plaintiff offered in evidence a letter-press copy of the agreement as set out in plaintiff's complaint, to which defendants objected upon the ground ''that it was incompetent, irrelevant, and immaterial, secondary evidence, not the proper way to prove the loss of a document.'' The objection was overruled and this ruling is claimed to be error.

It appears from the evidence given at the trial that the original agreement which was signed by plaintiff and the defendants and which was kept by plaintiff was lost and could not be found; that the plaintiff John W. Ulm and his wife, Mrs. Susan J. Ulm, had made diligent search for the same and neither of them were able to find it; that the duplicate of the original agreement signed by all the parties and which was kept by the defendants was burned on the sixth day of July, 1913, and that the copy that was left with the Montague Bank, which was unsigned by the parties, disappeared and could not be found by the bank authorities.

It appears that the agreement was typewritten at the plaintiff's office in the city of Chicago and that a letter-press copy of the same was taken. This letter-press copy was identified by the plaintiff at the trial and under the showing made by the plaintiff we think the defendants' objection to the said letter-press copy was properly overruled. This ruling of the court is clearly within the rule as

announced in *Kenniff* v. *Caulfield*, 140 Cal. 34, [73 Pac. 803], and *Morison* v. *Weik*, 19 Cal. App. 139, [124 Pac. 869].

In the case of *Kenniff* v. *Caulfield*, 140 Cal. 34, [73 Pac. 803], secondary evidence was received to show the contents of a lost deed and the supreme court, in passing upon the question of the amount of proof required in such matters, said: "The general rule concerning proof of a lost instrument is, that reasonable search shall be made for it in the place where it was last known to have been, and, if such search does not discover it, then inquiry should be made of the persons most likely to have its custody or who have some reason to know of its whereabouts.

"The party must show that he has in good faith, and to a reasonable degree, made an effort to discover the instrument, and to that end has exhausted all sources of information and means of discovery which were open to him and which in the nature of the case were possible. No fixed rule as to the necessary proof to establish loss, or what constitutes reasonable search, can be formulated. The terms 'reasonable search' and 'in good faith,' applied to proof of lost instruments, must be construed and defined under the facts in each particular case; there is no inflexible definition under which they can be applied to all cases. The sole object of such proof is, to raise a reasonable presumption, merely that the instrument is lost, and this is a preliminary inquiry addressed to the discretion of the judge. On this subject it is said: 'The rigor of the common law . . . has been relaxed in this respect, and nonproduction of instruments is now excused for reasons more general and less specific, and upon grounds more broad and liberal than were formerly admitted. If any suspicion hangs over the instrument, or that it is designedly withheld, a rigid inquiry should be made into the reasons for its nonproduction. But where there is no such suspicion, all that ought to be required is reasonable diligence to obtain the original—in fact, courts in such cases are extremely liberal. And as far as the sufficiency of the proof so offered is concerned, the rule in questions of this character is, that the trial judge is to determine the sufficiency of the proof. Under the facts and circumstances developed in the case, if they are sufficient to reasonably satisfy the mind of the court that the

49 Cal. App.—10

original is lost, and that it cannot be found after search made at the proper place, that is all that is necessary, and the sufficiency of the proof of the search being in general left to the discretion of the trial judge, this court will not review its rulings in that respect, unless the proof is manifestly insufficient to have warranted the secondary evidence.''

In *Morison* v. *Weik*, 19 Cal. App. 139, [124 Pac. 869], secondary evidence of a lost deed was received over plaintiff's objection, and the court in affirming the judgment said: ''Without entering upon a full discussion of the evidence, suffice it to say that it was sufficient to satisfy the mind of the court that the instrument was unintentionally mislaid or lost, and that after a diligent search made therefor it could not be found. Such preliminary proof is left to the discretion of the trial judge, and unless manifestly insufficient to warrant the introduction of secondary evidence, his ruling will not be disturbed on appeal.'' (See, also, *King* v. *Samuel*, 7 Cal. App. 55, [93 Pac. 391]; *California Nat. Bank* v. *Weldon*, 14 Cal. App. 765, [113 Pac. 334].)

[2]  Complaint is made by appellants that the finding ''That all fence material used, and all fencing constructed upon the aforesaid property during the term of said agreement was under the provisions thereof a partnership expense,'' is not sustained by the evidence. The contract provides: ''That the parties of the second part will look after and care for all of the buildings and improvements on or connected with the ranch and will proceed, at once, so soon as the present crop is cared for, to place fences and all the buildings in repair, the materials for such repair shall be purchased in joint account, but the labor of placing said fences and buildings in repair shall be done by or at the cost and expense of said parties of the second part.''

Under this provision defendants argue that there was no agreement by which defendants should build new fences, and that they should have been allowed a credit of $1,100, the amount that it cost them to put in a Page wire fence, and that said $1,100 should not be a charge against the copartnership.

The defendant C. W. Prather testified that when he took the place in 1909 the fences had been built a long term of

years, that the posts were rotted off and the boards would not hold nails, and that while he was there he put in about a mile and a half of Page wire fence; that he thought it was in 1911. That the fences were in that condition that they would not hold large bodies of stock cattle, had to keep a rider with them all the time; sometimes had as high as 900 head of cattle, and one time he had 1,000 head of cattle on the ranch and had to rent some land outside.

Because defendants put in Page wire fencing in place of posts that were rotted off and boards that would not hold nails does not take this matter out of the terms of the said agreement, and the said finding, in our opinion, is supported by the said contract and the evidence.

The matter of the granting of a receiver in this case was before this court in *Ulm* v. *Prather,* 29 Cal. App. 92, [154 Pac. 611], and the order appointing a receiver was there affirmed.

We think the evidence is sufficient to sustain finding No. 16, to the effect ''That by reason of the failure, neglect, and refusal of said defendants to render to said plaintiff the statements and reports contemplated by said agreement, said plaintiff was unable at the date of the commencement of said action to ascertain the true condition of the affairs of the respective parties to said agreement on September 30, 1913, or thereafter.''

The plaintiff testified that at the expiration of the contract he made an effort to have a settlement with Mr. Prather at the ranch, but he was not successful. He also, prior to bringing the action, caused a letter to be directed to the defendants by which he sought information in regard to the accounts, and by this letter demanded from defendants a full and complete statement showing the true status on September 30, 1913, of the business transacted under the agreement.

The judgment appealed from is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 26, 1920.

All the Justices concurred.